

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2507 | DATE | 2/10/2003 |
| CASE TITLE | CHARLES E. WALKER, SR., et al vs. THADDEUS BANIA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 2/21/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants plaintiffs' motion for partial summary judgment as to Count IV [9-1].

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 14 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 19 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | 03 FEB 13 PM 2:30 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES E. WALKER, Sr., <br> As TRUSTEE and on behalf of <br> THE EMPLOYEES PENSION PLAN <br> OF LOCAL 744, I.B. OF T., and <br> THE EMPLOYEES PENSION PLAN <br> OF LOCAL 744, I.B. OF T., and <br> LOCAL 744, I.B. OF T., <br><br> Plaintiffs, <br><br> v. <br><br> THADDEUS BANIA, <br><br> Defendant, | 01 C 2507 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued Thaddeus Bania ("Bania") seeking restitution and other damages suffered in relation to an alleged overpayment to Bania in the context of the termination of a pension plan. Pending is the plaintiffs' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 as to Count IV of the Complaint. For the reasons set forth below, plaintiffs' motion for summary judgment is granted.

## FACTS

The following facts are undisputed. Defendant Bania is a former employee of Local 744, I.B. of T. ("Local 744") and a participant in Plaintiff Employees Pension Plan ("the Plan"). (Pl.'s LR 56.1(a)(3) ¶¶ 3-4.) From August 30, 1976 through March 31, 2000, Bania held the position of bookkeeper for Local 744, with responsibilities at relevant times including, *inter alia*, bookkeeping for the Plan, preparation of checks to pay Plan benefits, and the

1

electronic reporting and payment of withholding taxes to the Internal Revenue Service in connection with the Plan's payment of retirement benefits. (*Id.* ¶¶ 16-17.)

Local 744 decided to terminate the Plan in April 1998. (*Id.* ¶ 7.) As a result of this decision to terminate, all Plan participants opted to receive lump sum distributions in liquidation of their accrued interests in the Plan. (*Id.* ¶¶ 8-9.) In addition to compensation for their accrued interests, certain members of the Plan were also entitled to subsidy payments ("the subsidy") in lieu of benefits they may have qualified for under the Plan by taking early retirement if the Plan had not been terminated. (*Id.* ¶¶ 10-11.) Bania was among the six Plan participants who qualified for the subsidy. (*Id.* ¶ 11.) However, it was subsequently determined that, after paying the full accrued benefit distribution to each Plan member, the Plan would no longer have sufficient assets to pay the six participants the subsidy at the same rate at which previous retirees who qualified for early retirement benefits had been paid. (*Id.* ¶¶ 9, 14.) The Plan's Actuary notified the IRS in March, 1999 that assets remaining after the accrued benefit distribution (totaling $242,116.00) would be pro-rated and paid to the six Plan participants qualifying for the subsidy. (*Id.* ¶ 14.) Shortly thereafter, the IRS issued a favorable determination letter regarding the Plan's termination and the Plan began making distributions. (*Id.* ¶ 15.)

As bookkeeper, Bania had responsibility for preparing the distribution checks, including the calculation, reporting, and payment of withholding taxes to the IRS. (*Id.* ¶¶ 16-17.) But in 1999, the withheld taxes from the participants' termination benefit checks were not remitted to the IRS, resulting in an underpayment in the amount of $125,405.20. (*Id.* ¶ 18.) Bania prepared payments to the six recipients of the subsidy (including himself) in May, 1999, but prepared checks in amounts in excess of the pro rata amount of the subsidy fund to which

2

the recipients were entitled. These checks were distributed to the six recipients, including Bania, on or about May 27, 1999. (*Id.* ¶ 20.) At that time, at least one other Plan participant had not yet been paid the accrued benefit to which he was entitled. (*Id.* ¶ 21.) After the subsidy checks had been paid to Bania and the other five recipients, there were insufficient funds in the Plan to pay this accrued benefit, and Local 744 made an additional payment of $31,500 to the Plan to enable this benefit to be paid. (*Id.*)

In early 2000, an independent audit of the Plan revealed that the $125,405.20 of taxes withheld from participants' accrued benefits distributions in 1999 had not been remitted to the IRS. (*Id.* ¶ 22.) The Plan's Trustees concluded that the subsidy recipients had been overpaid in the aggregate amount of $69,977.20 because this amount had been paid prior to the Plan's payment of all accrued benefits, including the taxes withheld from those accrued benefits. (*Id.* ¶ 23.) The overpayment paid specifically to Bania was $19,477.45. (*Id.*) The subsidy recipients were contacted and requested to refund their respective overpayments, and all the subsidy recipients except Bania voluntarily refunded the overpayments. (*Id.* ¶ 24.)

On April 10, 2001, plaintiffs filed suit against Bania, seeking to recover the overpayment as well as other damages. Count IV of the Complaint, as to which plaintiffs have now moved for summary judgment, alleges that Bania was unjustly enriched by this overpayment.

3

## Discussion

Summary judgment is proper when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating an absence of material facts in controversy, entitling it to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The nonmovant then has the burden to show through specific evidence that a triable issue of fact remains on the issues on which he bears the burden of proof at trial. *See Celotex*, 477 U.S. at 324. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemosource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

Defendant Bania responded neither to plaintiffs' motion for summary judgment, nor to plaintiffs' Local Rule 56.1(a)(3) statement of facts as to which there is no dispute. Local Rule 56.1(b) states in relevant part that a party opposing a motion filed pursuant to Fed. R. Civ. P. 56 "shall serve and file—(1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's statement . . . ." Failure to file a required Rule 56.1(b) response results in the binding admission of the truth of the moving party's Rule 56.1(a)(3) factual statements. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 412 (7th Cir. 1997) (considering substantively identical predecessor to Rule 56.1(b), Rule 12(N)(3)(b)). Such a failure requires

4

the court to treat the lack of response as a binding admission of the movant's statement of uncontested facts. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994). Although this admission does not inevitably require granting summary judgment against the nonmovant, it severely penalizes him by requiring the court to depart from its usual posture of construing all facts in favor of the non-moving party. *Id.*

Thus, in accordance with the Seventh Circuit's approval of strict adherence to Local Rule 56.1, the Court will not consider, for purposes of this motion, any facts contradicting plaintiffs' Local Rule 56.1(a)(3) statement, because such facts are not properly before the court. *See Smith v. Severn*, 129 F.3d 419, 425-26 (7th Cir. 1997). But the Court nevertheless will still view the facts presented by plaintiffs and all reasonable inferences that can be drawn therefrom in the light most favorable to the non-movant. *Id.* at 436.

The Seventh Circuit has held that restitution is proper in the retirement or pension fund context if the employer overpaid the employee or former employee and if the "equities favor" restitution. *Constr. Indus. Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993). To determine the demands of equity, the court considers four issues: (1) Are unauthorized contributions the sort of mistaken payments that equity demands be refunded? (2) Has the plaintiff delayed bringing this action for so long that laches, or some other equitable defense, bars recovery? (3) Has the plaintiff somehow ratified past payments? (4) Can the unfunded party demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied? *UIU Severance Pay Trust Fund v. Local Union No. 18-U*, 998 F.2d 509, 513 (7th Cir. 1993).

The Court first notes that plaintiffs apparently were not originally under contractual or any other obligation to make any subsidy payments at all to Bania, as such payments "became

a part of the accrued benefit of a Plan participant only after he or she had satisfied the conditions [of] . . . terminating employment and applying for a pension at or after age 57 and prior to age 65." (Pl.'s LR 56.1(a)(3) ¶ 10.) Rather, as part of the Plan's termination scheme approved by the IRS, funds remaining in the Plan after all accrued benefits had been paid would be distributed in a prorated manner to the six employees who potentially might have qualified for early retirement benefits. (*Id.* ¶¶ 14, 15, 11.) Bania became entitled to a pro-rated subsidy payment from the funds remaining in the Plan *after* all accrued benefits had been paid under the termination scheme because he was one of these six eligible employees. (*Id.* ¶ 11.)

But irrespective of Bania's responsibility for the mistake, which is not at issue in Count IV, he and the other five eligible employees were paid subsidies based on an amount pro-rated *before* all the Plan's accrued benefits obligations, including remittance of withheld taxes to the IRS, had been paid. (*Id.* ¶ 21.) This resulted in a significant overpayment to the six eligible employees. (*Id.* ¶ 23.) Applying the *UIU* criteria, the Court finds that the overpayment to Bania in this case was the precisely the sort of mistaken payment that equity demands be refunded. As plaintiffs brought this action approximately eight months after first requesting reimbursement from Bania, and as Bania has not even suggested that he was prejudiced or harmed in any way by the timing of this suit, the Court finds that plaintiffs' recovery in this case is not barred by laches. Nor does the Court find applicable any other equitable defense to which Bania might point. Plaintiffs have requested reimbursement for overpayment from all six of the eligible employees, and all but Bania have voluntarily complied with this request. (*Id.* ¶ 24.) Plaintiffs have taken no actions to ratify these overpayments, either officially or by any representations made to Bania. The Court therefore finds no evidence that plaintiffs have

6

in any way ratified the overpayment to Bania. Finally, the undisputed facts in the record establish that the overpayment to Bania was unintentional and contrary to the intentions expressed in the Plan's termination scheme. (*Id.* ¶¶ 14-15.) Bania had no entitlement to the subsidy funds other than that provided by the termination scheme. The shortfall resulting from the overpayment had to be made up from other funds controlled by Local 744. (*Id.* ¶¶ 22, 24.) Moreover, the Seventh Circuit has held that employers and other retirement plan sponsors that are "unable to recover mistaken payments may be less inclined to sponsor ERISA-qualifying plans . . . [thereby implicating] more than just the interests of the payer and the payee." *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.*, 53 F.3d 172, 175 (7th Cir. 1995). In view of these considerations, the Court finds find that plaintiffs have established that Bania would be unjustly enriched if recovery were denied. Accordingly, plaintiffs' motion for summary judgment as to Count IV is granted.

Plaintiffs have requested relief on Count IV in the form of: (1) restitution for the subsidy overpayment; (2) compensation for the amount of money lost as a result of the failure to make the required IRS withholding payment when due; (3) compensation for the Plan's attorney's fees and costs in bringing this lawsuit; and (4) such other relief as the court finds just and equitable. (Compl. ¶ 14.) Under Illinois law,

> The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies including the legal action of *assumpsit* and restitution . . . . The premise of that doctrine is that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." (Restatement of Restitution § 1, at 12 (1937).) To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity and good conscience.

*F.H. Prince Co., Inc. v. Towers Fin. Corp.*, 656 N.E.2d 142, 144 (Ill. App. Ct. 1995) (citations omitted); *see also UIU*, 10 F.3d at 467. Accordingly, the Court finds that plaintiffs are entitled to restitution from Bania in the amount of $19,477.45. As for the remainder of the requests in plaintiffs' prayer for relief as to Count IV, such requests will require further briefing and are denied without prejudice at this time. Further, relief in the form of compensation for the amount of money lost as a result of Bania's alleged failure to submit to the IRS the required withholding payment when due is more appropriately a remedy to be considered under Count I of the complaint, as to which plaintiffs have not moved for summary judgment and on which the Court expresses no opinion.

## Conclusion

For the reasons set forth in the Memorandum Opinion and Order, the Court grants plaintiffs' motion for partial summary judgment as to Count IV [doc. no. 9-1].

SO ORDERED:               ENTER: 2/10/03

HON. RONALD A. GUZMAN
United States Judge